835 So.2d 1212 (2003)
R.P., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, State of Florida, Appellee.
No. 4D02-74.
District Court of Appeal of Florida, Fourth District.
January 22, 2003.
Rehearing Denied February 19, 2003.
Genie Holcombe Rothman of Genie H. Rothman, P.A., Delray Beach, for appellant.
Jeffrey Dana Gillen, West Palm Beach, for appellee.
FARMER, J.
This case began as a dependency case, in which the Department of Children and *1213 Families (DCF) initially named the wrong man as the father. Several months after filing, DCF learned the identity of the actual father but could not locate him. Nearly a year after the initial filing, DCF dropped the dependency claim and refiled the matter as an action seeking a termination of parental rights (TPR). DCF finally located the actual father in state prison. The trial judge ordered the father to be brought from his incarceration for an advisory hearing, but learned on the day of the hearing that the father had not been served with notice because of his release from prison. The court then rescheduled the hearing and the father was served barely four weeks before the rescheduled hearing date. When the hearing began, a lawyer appeared on behalf of the father. As the lawyer explained to the court:
"I got five calls from my client yesterday afternoon asking whether he needed to be here. When I called back, first there seemed to be a confusion. My receptionist told him he didn't. When I called backit was 5:45to tell him he did need to be here. He lives 200 miles away; he does not have a vehicle; the only car rental place in that town closed at 5:00 o'clock. He could rent a car this morning and drive here, but couldn't be here by 9:00 o'clock. If the Court could just reschedule this to this afternoon, he would be here."
DCF thereupon moved for a default against the father, but the court continued the case until the afternoon.
As the afternoon session convened the father still was not present. However, his lawyer explained that:
"I spoke to them as soonto the grandmotheras soon as I got out of Court. They are 200-240 miles away approximately. They have an old pick-up truck. They were heading down here. [W]hen I got into the Court, I knew that they were on their way here. They were hoping to get here at least by 2:30."
The lawyer asked for a further limited continuance until their arrival. DCF renewed its motion for default. The trial court granted the default and terminated the parental rights of the father.[1] He appeals. We reverse.
We regard the trial court's failure to grant a further continuancesay, until the following dayto be an abuse of discretion. The record shows that after the father was finally served with a notice to appear, the advisory hearing was his first required appearance, despite the fact that the case had been pending for nearly two years. The lawyer made clear that the father was actually en route to the hearing and that he intended to be there personally. This advisory hearing occurred within a short time after the father was first served; there is no indication of stalling or disregard by the father. The fact that the case had been pending for two years before this particular hearing is not attributable to any delay or abuse on the part of the father. The requested continuance was for a short timeonly until the next day, at worstand there is no showing in the record that such a brief continuance would have had adverse consequences to the child. In short, there was not a single valid reason to refuse the continuance, but several good ones to grant it.
So important is the parent-child relationship that the termination of it may be accomplished by the state only with a punctilious regard for the due process rights of the parent. See Santosky v. *1214 Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); J.B. v. Fla. Dep't of Children & Family Services, 768 So.2d 1060, 1064 (Fla.2000) ("[t]he significance of the rights at issue here cannot be overstated."). In cases under chapter 61, this court "has always been of the opinion that custody should never be determined on a default basis." Webber v. Novelli, 756 So.2d 164, 165 (Fla. 4th DCA 2000). Surely that policy is no less applicable when parental rights are sought to be ended. While the statute does actually authorize a default at the advisory hearing in TPR cases,[2] courts should ordinarily refrain from determining a termination of parental rights by default where an absent parent is making reasonable effort to be present at the scheduled hearing and is delayed by forces or circumstances beyond the parent's control. We stress that there is nothing in this record hinting at any harm to the child by further delay. Nor does DCF contend that the child requires immediate permanency.
REVERSED.
GUNTHER and MAY, JJ., concur.
NOTES
[1] The father actually arrived at the courthouse barely an hour after the hearing had ended.
[2] See § 39.801(3)(d), Fla. Stat. (2001) ("If the person served with notice under this section fails to personally appear at the advisory hearing, the failure to personally appear shall constitute consent for termination of parental rights by the person given notice.").