846 So.2d 1278 (2003)
W.T., Mother of K.W., a Child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 5D02-3154.
District Court of Appeal of Florida, Fifth District.
June 13, 2003.
Dean G. Pepe of Pappas, Russell & Pepe, Daytona Beach, for Appellant.
Thomas A. Behe, Department of Children and Families Assistant District Legal Counsel, Daytona Beach, for Appellee.
PLEUS, J.
The mother appeals an order terminating her parental rights (TPR) and an order denying her motion to withdraw her consent to TPR. We affirm both orders. We write further to discuss the mother's argument that she executed the written surrender under duress.

Facts
The Department of Children and Families ("DCF") filed a petition for involuntary termination of parental rights against the *1279 mother. At the adjudicatory hearing on June 20, 2002, just as DCF was calling the mother to testify as its first witness, the following exchange took place:
Mr. Glugover: Your Honor, she's indicated she wishes to surrender at this time.
The Court: All right. Do you have your written surrender?
Mr. Glugover: I have one, Your Honor. Your Honor, she wants to talk to her uncle, who is custodian, before she signs.
The Court: We'll take a ten-minute recess.
(Thereupon court was in recess).
The Court: All right. Mr. Glugover?
Mr. Glugover: Your Honor, my client's read through the surrender form. She has agreed to the surrender. She spoke with Reverend Gooden, and he has allowed her to be part of the child's life through visitation, as long as she's clean and sober.
With that condition, is that correct, Mr. Gooden?
Mr. Gooden: That's correct.
The Court: All right. [W.T.], raise your right hand, please.
The Court: How old are you?
The Mother: Twenty-three.
The Court: How far have you gone in school?
The Mother: Tenth grade.
The Court: Can you read, write, and understand English?
The Mother: Yes.
The Court: Have you ever been treated for any mental illness or disease?
The Mother: No.
The Court: Are you under the influence of any drugs or alcohol right now?
The Mother: No.
The Court: Has anybody promised you anything or threatened you in any way to have you sign this surrender?
The Mother: No.
The Court: Did you read it?
The Mother: Yes.
The Court: Did you understand it?
The Mother: Yes.
The Court: Do you have any questions about it?
The Mother: No.
The Court: This surrender means your child will be free to be adopted by Reverend Gooden. This is a permanent decision. You can't change your mind later on for any reason. Do you understand that?
The Mother: Yes.
The Court: I'll accept the surrender as knowingly and freely entered.
On July 11, 2002, the mother wrote a letter to the judge alleging that her attorney failed to properly represent her in the adjudicatory hearing and that he gave her an ultimatum to choose between voluntarily giving up her daughter or giving up her unborn child. The court appointed the mother a new attorney, who filed a motion to withdraw and/or invalidate consent to termination of parental rights. The motion alleged that the mother signed the surrender under duress. The court granted an evidentiary hearing on this motion.
At that hearing, the mother testified that she did not want to sign the surrender but ultimately agreed to sign it because: (1) her attorney told her they were going to lose at trial and that her only choice was to sign the surrender or risk losing her unborn child because of an involuntary termination; (2) her great uncle, who intended to adopt the child, promised her visitation with the child; and (3) she was very emotional and pregnant at the time. She also criticized her attorney for being *1280 unprepared to proceed with the adjudicatory hearing. On cross-exam, the mother conceded that no one from DCF had pressured her to sign the surrender.
Two witnesses who were with the mother on the day of the adjudicatory hearing testified the mother was very emotional and was told by her attorney that she had no chance of winning, and that it would be in her best interest to sign the surrender. Both witnesses heard the uncle promise to allow the mother visitation. Both witnesses admitted that no one threatened the mother to induce her to sign the surrender.
The mother's former attorney, Jonathan Glugover, testified he wrote the mother numerous letters asking her to contact him and provide him with the names of any witnesses. He did not have any witnesses prepared and did not know the mother was in a drug treatment program because the mother failed to respond to his repeated attempts to contact her. Glugover moved to continue the trial, but the court denied his motion.
Glugover admitted telling the mother before the hearing that she would probably lose the trial. He also admitted telling the mother it was in her best interest to surrender so that DCF could not use an involuntary termination as grounds to take away her unborn child.[1] He denied coercing the mother or giving her an ultimatum. During this conversation, the mother asked to speak to her great uncle. The great uncle agreed to allow the mother to visit the child.
DCF recalled the mother, who admitted that she had previously testified that no one promised her anything or pressured her into signing the surrender.
The trial court denied the motion to withdraw and subsequently entered an order terminating the mother's parental rights.

Analysis
The mother argues that she surrendered her parental rights under duress. She claims her attorney "threatened" that if she did not voluntarily surrender, they would lose the TPR trial and the resulting involuntary TPR could be used by the state to take away her unborn baby. She also claims she was coerced into surrendering by her great uncle's promise to allow her to visit the child after he adopted him. She argues that these external pressures, coupled with the fact that she was pregnant, uneducated and emotional, all coalesced to destroy her free agency.
Section 39.464(1), Florida Statutes (1997), authorizes termination of parental rights based on properly executed documents, and provides in subsection (1)(a)2. "the surrender and consent may be withdrawn ... only after a finding by the court that the surrender and consent were obtained by fraud or duress." In K.C. v. Adoption Services Inc., 721 So.2d 811, 812 (Fla. 4th DCA 1998), the court explained the test for proving duress in attempting to withdraw consent to TPR as follows:
Duress is:
A condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do and act or make a contract not of his own volition.

*1281 Herald v. Hardin, 95 Fla. 889, 116 So. 863, 864 (1928). In order to prove duress,
"it must be shown (a) that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or will and (b) that this condition of mind was caused by some improper and coercive conduct of the opposite side." City of Miami v. Kory, 394 So.2d 494 (Fla. 3d DCA 1981).
The mother has the burden to prove duress by clear and convincing evidence. K.C., 721 So.2d at 812. Our standard for reviewing the lower court's decision on denying the mother's motion to withdraw her consent to TPR is whether the court abused its discretion. In the Interest of J.R.G., 624 So.2d 273 (Fla. 2d DCA 1993).
The transcript of the adjudicatory hearing does not reveal any evidence of duress. On the contrary, it shows that the judge inquired as to whether the mother was competent and understood the terms of the surrender, to which she indicated she did. The judge also asked her whether she had been promised anything or threatened in any way to sign the surrender, to which she answered no.
Regarding the alleged pressure by the mother's attorney, his conduct does not meet the second prong of the test because it was not improper and it was not conduct of the opposite side. Glugover admitted telling the mother before the hearing that she would probably lose. He did not have any witnesses prepared and did not know the mother was in a drug treatment program because the mother failed to respond to his repeated attempts to contact her. Glugover moved to continue the trial, but the court denied his motion. Under these circumstances, Glugover properly counseled his client about the likely outcome of the trial.
Glugover also admitted telling the mother it was in her best interest to surrender so that DCF could not use an involuntary termination as grounds to take away her unborn child. This advice was in line with section 39.806(1)(i), Florida Statutes, which allows a TPR petition to be filed "when the parental rights of the parent to a sibling have been terminated involuntarily." As DCF notes, "[I]t is not improper and therefore not duress to threaten what one has a legal right to do." City of Miami v. Kory, 394 So.2d 494, 498 (Fla. 3d DCA 1981) (citation omitted). Accordingly, Glugover's advice was neither incorrect nor improper.
Nor does the great uncle's promise satisfy the second prong of the test for duress. Even if the mother relied on the great uncle's promise, she had the burden to prove by clear and convincing evidence that her reliance was "caused by some improper and coercive conduct of the opposite side." The mother's argument that the great uncle should be considered the "opposite side" is persuasive. He was an outside force and had a vested and adversarial interest in the case, at least as it related to custody of the child.
However, there is no evidence to suggest it was coercive. To coerce means to (1) restrain or dominate by force; (2) compel to an act or choice; and (3) bring about by force or threat. Merriam-Webster Dictionary (2003), available at http://mw.com/cgi-bin/dictionary. There was no evidence of force, threat, restraint or domination by the great uncle. His conduct cannot even be construed as compelling the mother to act when there was evidence that the mother initiated the conversation with him. Accordingly, we cannot say that the lower court abused its discretion in denying the motion to withdraw consent.
*1282 Having concluded that the consent was not executed under duress, we decline to address the mother's remaining arguments because they were not raised below and therefore not preserved for appeal.[2] Accordingly, we affirm the order denying motion to withdraw consent to TPR and the termination order.
AFFIRMED.
SAWAYA and TORPY, JJ., concur.
NOTES
[1] Glugover also noted that he gave the mother the same advice in prior proceedings involving the termination of her parental rights to her two older children. The mother took his advice and those children were adopted by the great uncle.
[2] The mother argues the lower court erred in failing to warn her that the great uncle's promise was unenforceable. This argument was not raised in the motion to withdraw consent. Even if this argument had been preserved for appeal, our review of the consent colloquy indicates that the judge adequately established that the consent was voluntary and unconditional. The mother also argues that the lower court erred in terminating parental rights without taking any testimony on the best interest of the child at an adjudicatory hearing. We do not address this argument because it was not raised below. Further, the mother waived any right to contest the sufficiency of the termination order by executing the written surrender.