ALTENBERND, Chief Judge.
T.L.D. appeals a judgment terminating her parental rights to her child, A.N.D. The judgment was entered based upon T.L.D.’s implied consent to the termination, which resulted from her failure to appear at the adjudicatory hearing. See § 39.801(3)(d), Fla. Stat. (2002). Because we conclude the trial court applied the wrong analysis in ruling on T.L.D.’s motion to set aside her implied consent, we reverse the judgment and remand for further proceedings. Our reversal on this issue renders the other issue raised by T.L.D. moot.
On April 16, 2002, the Department of Children and Family Services filed a petition to terminate T.L.D.’s parental rights to A.N.D. and three other children. The petition also sought to terminate the parental rights of the fathers of these children. As grounds for terminating T.L.D.’s parental rights, the petition alleged that she had abandoned the children, had engaged in unspecified conduct toward the children that demonstrated that her continued involvement with them would threaten their life or well-being without regard to the provision of services, and had refused to substantially comply with her case plan regarding the children after they had been declared dependent. See § 39.806(l)(b), (c), (e), Fla. Stat. (2002).
Sometime after the petition was filed, the Department located the biological father of three of the children and began pursuing reunification of this father and his children. As a result, the Department dismissed that portion of the petition for termination involving these three children. See, e.g., § 39.811(6), Fla. Stat. (2002). The Department proceeded only on that portion of the petition that sought to terminate T.L.D.’s parental rights to A.N.D.[1]
T.L.D., through appointed counsel, filed an answer to the petition, denying the substantive allegations against her. There were numerous pretrial hearings held on this petition. The adjudicatory hearing was first set for August 27, 2002, then continued twice and rescheduled for June 9, 2003. T.L.D. appeared at every required hearing from April 16, 2002, when the petition was filed, until June 5, 2003, when she appeared voluntarily at the pretrial conference. T.L.D. was ordered to appear at the adjudicatory hearing on June 9, 2003, and warned that if she failed to appear, she would be “considered to have agreed to terminate” her parental rights.
On the morning of June 9, 2003, T.L.D. contacted her counsel and indicated that she was unable to attend the adjudicatory hearing. She informed her attorney that *913 she had suffered second-degree sunburns at the beach on Sunday, June 8, as a result of remaining in the sun without sunscreen lotion for an extended period of time. Although the hearing held on June 9 was not transcribed, our record contains a “memo of court hearing” which indicates that T.L.D.’s counsel appeared at the adjudicatory hearing and relayed this information to the trial judge. This memo of court states: “Consent by default for failure to appear at today’s hearing. . Court will entertain a motion to set aside default if and when mother appears before the court.... Motion must be filed, within 10 days or final judgment will be filed.”
On June 12, 2003, T.L.D. filed a “motion to set aside default.”[2] The motion explained that on the night of June 8,- she had sought treatment for her extreme sunburns at a local hospital and had received prescriptions of anti-inflammatory and pain medications. In support of her allegations, the motion attached the “patient instructions for aftercare” that 'T.L.D. received from the hospital.
At the evidentiary hearing on T.L.D.’s motion to set aside her consent, the trial judge expressed understandable confusion over what procedure he was required to follow when faced with a parent’s motion to set aside a consent to a termination of parental rights when that consent was entered by “default.” At the time of this hearing, there was no case law specifically addressing the analysis to be applied to such a motion. The trial judge indicated that rather than approach the issue with the supposition that a motion to set aside a default should be liberally granted, he was going to consider the context of the proceedings and “approach it from the standpoint of whether I think this is a very good excuse and whether I think that it [is in the] best interest of the child.” The court concluded that T.L.D.’s extreme sunburn was not a good excuse for T.L.D.’s failure to appear. The court also noted that the child’s best interest would be served by refusing to vacate the consent because this would permit a speedier resolution to a permanent placement for the child. However, there was no evidence regarding any permanency plans available for this child, nor any other evidence regarding whether a termination of parental rights by way of the. mother’s implied consent was in the child’s best interest. The trial court denied the motion to set aside the consent and thereafter entered the final judgment terminating T.L.D.’s parental rights to A.N.D. T.L.D. appeals this final judgment.
Pursuant to section 39.801(3)(d), “[i]f a parent appears for the advisory hearing and the court orders that parent to personally appear at the adjudicatory hearing for the petition for termination of parental rights, stating the date, time, and location of said, hearing, then failure of that parent to. personally appear at the adjudicatory hearing shall constitute consent for termination of parental rights.” See also Fla. R. Juv. P. 8.525(d); J.B. v. Fla. Dep’t of Children & Family Servs., 768 So.2d 1060 (Fla.2000). The purpose of this “default” provision is to ensure that the object of the termination petition is not defeated by the parent’s neglect of the *914 proceeding. J.B., 768 So.2d at 1067. Here, there is no question that T.L.D. was ordered to appear at the adjudicatory hearing and that she did not. Thus, the trial court was authorized to find that she had impliedly consented to the termination.
When the circuit court entered the consent, it delayed entering the final judgment and provided T.L.D. the opportunity to move to set it aside. T.L.D. filed an appropriate motion three days later. See Fla. R. Juv. P. 8.270(b)(1) (permitting extraordinary relief from orders, upon such terms as are just, based upon mistake, inadvertence, surprise, or excusable neglect). Although case law has recognized a parent’s right to seek to set aside such a “consent by default,” see, e.g., M.C. v. State, Dep’t of Children & Families (In re W.C.), 797 So.2d 1273 (Fla. 1st DCA 2001) (holding trial court did not abuse discretion in denying motion to set aside termination based upon implied consent); A.J. v. Dep’t of Children & Families, 845 So.2d 973 (Fla. 4th DCA 2003) (holding trial court abused discretion in failing to set aside dependency based upon implied consent), neither the statutes nor the rules of juvenile procedure provide any guidance as to how a trial court should address such a motion.
After the trial court rendered its decision in this case, the Third District addressed this issue in E.S. v. Department of Children & Family Services, 878 So.2d 493 (Fla. 3d DCA 2004). In E.S., the Third District held that the “usual three-part test for vacating a default” would apply to a request to vacate a consent entered pursuant to section 39.801(3)(d). Id. at 496. Thus, the party seeking to vacate the consent must act with due diligence, demonstrate excusable neglect, and demonstrate the existence of a meritorious defense.[3] Id. (citing R.H. v. Dep’t of Children & Family Servs., 860 So.2d 986 (Fla. 3d DCA 2003)); see also S.C. v. Dep’t of Children & Families, 877 So.2d 831 (Fla. 4th DCA 2004).[4] The moving party carries the burden of persuasion. E.S., 878 So.2d at 496-97.
Further, while section 39.801(3)(d) does authorize constructive or implied consent in termination cases, courts should ordinarily refrain from determining a termination of parental rights by default when an absent parent makes a reasonable effort to be present at a hearing but is prevented or delayed by circumstances beyond the parent’s control. R.P. *915 v. Dep’t of Children & Families, 835 So.2d 1212, 1214 (Fla. 4th DCA 2003); S.C., 877 So.2d at 833; see also G.A. v. Dep’t of Children & Family Servs. (In re I.A.), 857 So.2d 310, 312 (Fla. 2d DCA 2003). Florida public policy favors an adjudication on the merits over the entry of a default, and thus a properly filed motion to vacate a consent by default should be liberally granted. R.H., 860 So.2d at 988. This public policy is particularly implicated in cases involving a parent’s fundamental right to the care, custody, and control of a child. See Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).
We adopt the reasoning of E.S. and conclude that the trial court should have applied these principles to analyze T.L.D.’s request to set aside the consent entered as a result of her nonappearance.[5] In this case, the trial court specifically indicated that it was not presuming that this type of motion should be “liberally granted” nor was it considering the public policy of deciding cases on the merits. There is no question that T.L.D. exercised poor judgment the day before and the day of the scheduled adjudicatory hearing. However, in light of her attendance at all prior hearings and her diligence in seeking to set aside the consent, it is not clear that the trial court would have denied her request to set aside the consent under the proper analysis. Further, we note that the Department did not have immediate permanency plans for this child, but was waiting to determine whether the child could be placed with the half-siblings and their father. Thus it is not clear that the Department or the child would have been prejudiced by the trial court permitting T.L.D. an opportunity to defend against the termination petition.
We therefore reverse the judgment terminating T.L.D.’s parental rights to A.N.D. On remand, the trial court shall reconsider T.L.D.’s motion to set aside the consent. Our reversal of the judgment on this basis renders moot the remaining issue raised by T.L.D.
Reversed and remanded.
STRINGER and DAVIS, JJ., Concur.

. The father of A.N.D. is unknown. The order on appeal also terminated the rights of this unknown father. See § 39.803(4), Fla. Stat. (2002). At the time the judgment on appeal was entered, the Department was considering placing A.N.D. with the father of her three half-siblings if these siblings were reunified with their father.

. As this court has previously noted, based upon the statutes and rules of juvenile procedure the term "default” is not the appropriate term to use in this context. See S.B. v. Dep’t of Children & Family Servs. (In re B.B.), 858 So.2d 1184, 1186 (Fla. 2d DCA 2003); G.A. v. Dep’t of Children & Family Servs: (In re I.A.), 857 So.2d 310, 311-12 (Fla. 2d DCA 2003); P.C. v. Dep’t of Children & Family Servs. (In re S.C.), 857 So.2d 217, 218 (Fla. 2d DCA 2003). Rather, the statutes and rules refer to a parent’s "consent.” Because this consent occurs through implication, it may be referred to as "presumed consent,” "implied consent,” or "constructive consent.”

. We caution that the third part of this test, “existence of a meritorious defense,” may require a slightly different analysis in a termination case than in a typical civil case. In a typical civil case, a default cannot be entered when the party's counsel attends the hearing. Thus, a default is entered when no one appears to defend the case. In this context, a default should not be set aside unless the defendant establishes some defense or line of evidence that would have had some chance of changing the outcome.
In dependency or termination cases, a party is deemed to have consented to the entry of the judgment, even though his or her counsel is present and prepared to defend. Given the fundamental nature of a parent's rights to the care, custody, and control of a child, see Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and a parent's potential role in assessing the manifest best interests of the child and the least restrictive means of protecting the child, we are not entirely convinced that the showing required to establish a meritorious defense in such a case can be compared to that in other civil cases. At a minimum, a "meritorious defense” should include any meritorious arguments regarding the grounds for termination, the manifest best interest of the child, and the least restrictive means of protecting the child.

. R.H., and S.C. were also issued after the trial court's ruling in this case.

. We emphasize that our holding is limited to those consents implied by section 39.506(3), Florida Statutes (2002) (involving dependency), and section 39.801(3)(d) (involving termination of parental rights). It does not apply to cases in which a parent voluntarily executes a written surrender of the child and consents to the entry of an order giving custody of the child to the Department. See § 39.806(l)(a), Fla. Stat. (2002); W.T. v. Dep’t of Children & Families, 846 So.2d 1278 (Fla. 5th DCA 2003).