920 So.2d 170 (2006)
In the Interest of T.B., a child.
T.B., Appellant,
v.
Department of Children and Family Services, Appellee.
No. 2D05-1100.
District Court of Appeal of Florida, Second District.
February 8, 2006.
*171 Geraldyne H. Carlton of Carlton & Carlton, P.A., Lakeland, for Appellant.
Douglas Sherman of the Department of Children and Family Services, Bartow, for Appellee.
SILBERMAN, Judge.
T.B. (the father) appeals the final judgment terminating his parental rights to his son.[1] He argues that the trial court erred in denying his request for a continuance and in determining that his failure to appear at the adjudicatory hearing constituted his consent to the termination of his parental rights. Because we conclude that the trial court abused its discretion in not granting the father's request for a continuance, we reverse the consent order and final judgment and remand for further proceedings.
On January 6, 2004, the father appeared for the scheduled adjudicatory hearing, but the hearing was rescheduled to April 14, 2004. The father's attorney, Mr. Hardwick, then sought a continuance because Mr. Hardwick was scheduled for National Guard duty on April 14, 2004. The trial was rescheduled to April 26, 2004.
When the father and his attorney appeared on April 26, Judge Green informed them that due to a scheduling conflict the adjudicatory hearing would be postponed until the next day, April 27, 2004. Mr. Hardwick explained to Judge Green that this created a hardship for the father because his mother (the grandmother) had driven him nine hours from Navarre, Florida, to attend the hearing in Bartow, that there were two teenage girls at home who could not be left alone overnight, and that both the father and the grandmother had to be at work the next day. Mr. Hardwick requested a continuance to a day other than April 27. Initially, Judge Green stated that if the parties agreed, the matter could be continued. Ms. Harlan, the attorney for the child's mother, stated that she was unable to agree to a continuance and explained, "This is not even my case." A discussion was held off the record, and then Judge Green stated, "Well, I've just been advised that Judge Hunter wants this case, uh  tried tomorrow. So, that's what  what we'll do." Judge Green ordered the father to appear the next day before Judge Hunter, and the father responded that he could not attend. Judge Green warned the father that "if you're not here tomorrow, there's going to be a default against you."
On April 27, 2004, Mr. Hardwick appeared before Judge Hunter without the father and asked for a continuance on the father's behalf. He explained that the father did not have a driver's license, that the grandmother had to drive him to court, and that she and the father had arranged for time off from work and had been present for trial as scheduled for the prior day. *172 He further explained that there were two children back in Navarre, fourteen and sixteen years old, and overnight accommodations had not been made for them. He asked that the trial be continued in order that the father could be present. He reiterated that the case had been specifically set for hearing on the prior day and that the father had made arrangements in order to be there on the scheduled day.
Attorney Wilson for the Department of Children and Family Services and Attorney Harlan for the mother did not oppose a continuance. They informed the court that they had both subpoenaed a therapist, who could not be present that day, April 27, and they sought to have the matter bifurcated so that the therapist could appear and give live testimony. In addition, a psychologist's report, an "extremely important piece of evidence," had only been received the day before. Mr. Wilson asked that the case not be continued for more than thirty to forty days, but Judge Hunter stated that he would not continue the case. However, he agreed to bifurcate the case to allow the therapist to testify at a later date.
After further discussion, Judge Hunter said to Mr. Wilson, "Well, you haven't moved for a default. I would seriously consider one."[2] Mr. Wilson then moved for a default, and Judge Hunter orally granted that motion and denied Mr. Hardwick's motion for a continuance. Mr. Hardwick asked to be excused from the proceedings, and Judge Hunter excused him. Judge Hunter then commenced an evidentiary proceeding that focused primarily on the petition to terminate the mother's parental rights.
After the lunch recess, Mr. Brawley, the attorney for the guardian ad litem, asked Judge Hunter to revisit the father's motion for continuance because Mr. Brawley was "fearful that an appellate court would see your denial of the continuance as an abuse of discretion and further result in delay of the children's permanency." Mr. Wilson, the Department's attorney, explained that was why he had hesitated to move for a default originally and noted that "probably the safest thing to do is just set aside your default." Ms. Harlan, the mother's attorney, also advised Judge Hunter that, based on her experience, "there is a fairly high likelihood that your default will be reversed on appeal"; she further noted that the father "showed up at least twice, maybe three times, when previously ordered to appear. And so he's built a record of his interest in this case."
A lengthy discussion ensued, and Judge Hunter stated that he understood the "significant constitutional issue involved in terminating somebody's parental rights." However, he also recognized the "significant issues in running a court system timely and efficiently." Judge Hunter noted that he was "being a little philosophical" and stated as follows:
I didn't know we necessarily set trials at the convenience of the litigants. I thought we set trials based on the convenience and availability of the lawyers, the judge and potential expert witnesses, more so than parties. I mean, this is a termination of parental rights case. If you're all that interested in maintaining a parental relationship with your child, I would think you would be willing to risk losing a job to stay here for the trial.
After further discussion, Judge Hunter stated that the fact that arrangements had *173 not been made in advance for extra time off from work "is not, in my mind, a legitimate excuse for not appearing at something as significant as a termination of parental rights trial." Judge Hunter denied the requested continuance, concluding that the father had his opportunity to be present but failed to do so.
The court then received further testimony. When Mr. Wilson indicated he had no more witnesses for that day, Judge Hunter stated that the next hearing date would be May 13, 2004. A continuance was later granted at the request of the mother's attorney, and the hearing was concluded on June 9, 2004. The trial court did not enter the consent order as to the father or the final judgment terminating parental rights until February 7, 2005.[3]
Section 39.801(3)(d), Florida Statutes (2003), provides, in pertinent part, as follows:
If a parent appears for the advisory hearing and the court orders that parent to personally appear at the adjudicatory hearing for the petition for termination of parental rights, stating the date, time, and location of said hearing, then failure of that parent to personally appear at the adjudicatory hearing shall constitute consent for termination of parental rights.
See also Fla. R. Juv. P. 8.525(d) (same). The Florida Supreme Court has recognized that the purpose of this provision allowing for consent by failure to appear is to ensure that a parent's neglect of the proceeding does not defeat a termination petition. See J.B. v. Fla. Dep't of Children & Family Servs., 768 So.2d 1060, 1067 (Fla.2000). The provision allows the trial court to conclude a termination of parental rights case even if a parent has chosen not to participate. Id. Here, the facts indicate that the father did choose to participate in the proceedings and made arrangements to be present on the date that had been noticed for the hearing.
The nature of the consent to termination based on a failure to appear is an implied or constructive consent. See T.L.D. v. Dep't of Children & Family Servs. (In re A.N.D.), 883 So.2d 910, 913 n. 2 (Fla. 2d DCA 2004). Although section 39.801(3)(d) allows for an implied consent to termination, "courts should ordinarily refrain from determining a termination of parental rights by default when an absent parent makes a reasonable effort to be present at a hearing but is prevented or delayed by circumstances beyond the parent's control." Id. at 914 (citing R.P. v. Dep't of Children & Families, 835 So.2d 1212 (Fla. 4th DCA 2003)); see also B.H. v. Dep't of Children & Families, 882 So.2d 1099, 1100-01 (Fla. 4th DCA 2004) ("Courts have made a distinction between parents who fail to appear at a hearing without a reasonable explanation versus those who have made some reasonable effort to be present."). Especially in cases dealing with the rights of a parent to the care, custody, and control of a child, public policy favors an adjudication on the merits rather than the entry of a default. T.L.D., 883 So.2d at 915.
With these principles in mind, we now consider the trial court's denial of the father's motion to continue the adjudicatory hearing. A trial court's decision to grant or deny a motion for continuance in a termination proceeding is subject to an abuse of discretion standard of review. See J.W. v. Dep't of Children & Families, 835 So.2d 316, 317 (Fla. 5th DCA 2002); C.J. v. Dep't of Children & Families, 756 *174 So.2d 1108, 1109 (Fla. 3d DCA 2000). Under the unusual circumstances of this case, we conclude that the trial court abused its discretion in denying the father's motion for continuance of the adjudicatory hearing. Through no fault of the father, the adjudicatory hearing had been continued previously, and the father had appeared for the hearings as scheduled for January 6, 2004, and April 26, 2004.
On April 27, 2004, the father's attorney informed Judge Hunter that the father was not present but that he had attended the hearing that had been specifically set for the prior day. The attorney described the circumstances to Judge Hunter, and nothing in the record suggests that the father knew in advance that the scheduled termination hearing might not be held on April 26 or that he should have made arrangements to stay in Bartow through April 27. Although Judge Hunter expressed his displeasure that the father did not stay in town to attend the April 27 hearing, no one disputed that the father did not have a driver's license, that the grandmother had driven him nine hours to be at the April 26 hearing, that he and the grandmother were required to return to work on April 27, and that he had not made overnight arrangements for the girls at home because he anticipated returning to Navarre after the April 26 hearing.
Also at the April 27 hearing, Judge Hunter was told that the therapist was not available to testify that day. Judge Hunter decided to proceed in the father's absence, but he ruled that the hearing would not be completed until a later date so that the therapist could appear and testify in person. Later, Judge Hunter again refused to grant a continuance even though the attorneys for the guardian ad litem, the mother, and the Department asked him to reconsider the father's request for a continuance, noting that the denial of the continuance was likely reversible error.
Judge Hunter's decision to deny the continuance and his statement that, regardless of the circumstances, the father should have been present for the April 27 hearing appear to be consistent with his comments that the convenience of the lawyers, the judge, and the expert witnesses was paramount. It appears that Judge Hunter placed more emphasis on judicial economy and convenience than on the father's right to parent his child and to have his day in court before the State terminated his parental rights. Based on all of the circumstances, and particularly because the record demonstrates that the father was making reasonable efforts to be present on the dates that the termination hearing had been scheduled and that he was not neglecting the proceedings, we reverse the consent order and final judgment terminating the father's parental rights and remand for further proceedings.
Reversed and remanded.
ALTENBERND and KELLY, JJ., Concur.
NOTES
[1] The final judgment also terminated the mother's parental rights to the son and two other children. The mother is not a party to this appeal.
[2] Although the court and the attorneys used the term "default," a parent's failure to appear at the adjudicatory hearing constitutes a "consent" to the termination of parental rights. See § 39.801(3)(d), Fla. Stat. (2003); T.L.D. v. Dep't of Children & Family Servs. (In re A.N.D.), 883 So.2d 910, 913 n. 2 (Fla. 2d DCA 2004).
[3] In addition to acknowledging the father's consent to termination, the final judgment contains findings as to the father's abandonment of the child and the father's capacity and disposition to care for the child. These findings were made, however, without the father having an opportunity to defend the allegations.