997 So.2d 1216 (2008)
R.B., Mother of W.B. and R.A., Children, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 5D08-1869.
District Court of Appeal of Florida, Fifth District.
December 30, 2008.
*1217 Lawrence P. Cartelli, Assistant Regional Counsel, Tavares, for Appellant.
John A. Papajik, Tavares, for Appellee.
COHEN, J.
R.B. appeals an order denying her motion to set aside the surrender of her parental rights to her two children. We affirm.
The younger child, W.B., was hospitalized and sheltered due to severe malnutrition. The older child, R.A., was sheltered based on imminent risk. At the shelter hearing, R.B. appeared and was appointed counsel and the trial court scheduled an arraignment before a general master.
At the arraignment, the Department's counsel announced that it had been informed that R.B. had some interest in signing paperwork to surrender her parental rights to the children. After consultation, R.B.'s counsel confirmed that she was prepared to surrender her parental rights at that time. In open court, R.B. was placed under oath and signed the "Affidavit and Acknowledgment of Surrender of Parental Rights, Consent, and Waiver of Notice" forms. The forms were witnessed by R.B.'s counsel and a bailiff with the Lake County Sheriff's Office.
R.B.'s counsel suggested the general master inquire of his client because she had indicated she might be mentally unstable. To assure that R.B. understood the effect of surrendering her parental rights, the general master asked several pertinent questions. In relevant part, R.B. indicated that she had completed just short of twelve years of formal education, was not under the influence of any psychotropic medications, had never been evaluated for any mental illness or disorder, was not under the influence of any alcohol or controlled substance, and that she believed it was in her children's best interest to surrender her parental rights. Her counsel also asked follow-up questions, confirming that she understood the finality of her actions and verifying that no one had coerced or made any promises to secure the surrenders. The general master found the surrenders were knowingly, freely, and voluntarily executed. The trial judge accepted and approved these findings.
Five months later, with new counsel, R.B. filed a motion to set aside the voluntary surrenders of parental rights. She alleged that her surrenders had been coerced, were not properly acknowledged, and that her mental condition was not properly addressed. Following a hearing, the trial court denied the motion.
Two provisions of section 39.806, Florida Statutes (2007), are implicated in this appeal. The first involves the form required if a parent elects to execute a written surrender, thereby giving custody of the child to the Department for adoption. Section 39.806(1)(a)1. requires the "surrender document [to] be executed before two witnesses and a notary public or other person authorized to take acknowledgements." R.B. argues that the surrenders were not notarized and thus, were ineffectual. This argument ignores the provision allowing the surrender document *1218 to be witnessed before a person authorized to take acknowledgements. Because the order of referral gave the general master the authority to "administer oaths and conduct hearings," she inherently had the authority to take the acknowledgement. See Burns v. Burns, 153 Fla. 73, 13 So.2d 599, 602 (1943) (a master is an officer of the court whose authority is set forth in the order of referral). Furthermore, the purpose of this statutory provision is to insure the reliability and genuineness of a surrender of parental rights. The legislature rightly intended there to be certainty in the identity of one who would give up this fundamental right. This was accomplished when the general master took the acknowledgment.
The second involves the revocation of a written surrender and consent based on fraud or duress, as authorized by section 39.806(1)(a)2. R.B. argues that she should have been allowed to revoke the surrenders because she signed them under duress. In her motion, R.B. alleged that she was incarcerated for two weeks at the time of the dependency arraignment hearing and that immediately before the hearing an unknown Department representative told her that refusing to sign the surrenders would result in her spending twenty years in the Department of Corrections.
R.B. has the burden to prove duress by clear and convincing evidence, and we review the trial court's decision for an abuse of discretion. See W.T. v. Dep't of Children & Families, 846 So.2d 1278, 1281 (Fla. 5th DCA 2003). The trial court properly conducted an evidentiary hearing at which R.B. reiterated the allegations contained within her motion to set aside the surrenders. However, neither R.B.'s testimony, nor the evidence from the jail's or the Department's witnesses indicated that a Department representative visited her prior to the hearing when R.B. signed the surrenders. Instead of presenting clear and convincing evidence of duress, R.B. simply presented supposition and speculation.
R.B.'s mental health was also properly addressed. R.B. explained that she might have mental health issues because her mother is mentally challenged, her half brother is mentally challenged, and it is possible that she is "borderline," although she had never been evaluated. In denying the motion, the trial court weighed the evidence, including the transcript of the arraignment, and applied the correct legal standard. There is competent, substantial record evidence to support the trial court's determination.
Finally, R.B. argues the trial court erred in not making factual findings in its order as to the specific act or acts causing termination of parental rights. This issue was not brought to the attention of the trial judge by a motion for rehearing and thus, has not been preserved for appellate review. See Mathieu v. Mathieu, 877 So.2d 740 (Fla. 5th DCA 2004).
AFFIRMED.
PALMER, C.J., and MONACO, J., concur.