NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

In the Interest of S.M. and M.M., children.　）
　　　　　　　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　　　　）
R.W.M.,　　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　　　　）　Case Nos. 2D14-5630
　　　　　　　Appellant,　　　　　　　　　）　　　　　　　2D15-2243
　　　　　　　　　　　　　　　　　　　　　　）
v.　　　　　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　　　　）　CONSOLIDATED
DEPARTMENT OF CHILDREN　　　　　　）
AND FAMILIES and GUARDIAN AD　　　）
LITEM PROGRAM,　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　　　　）
　　　　　　　Appellees.　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　　　　）

Opinion filed December 18, 2015.

Appeals from the Circuit Court for Manatee
County; Scott Brownell, Judge.

R.W.M., pro se.

Stephanie C. Zimmerman, Statewide
Director of Appeals, Bradenton, for
Appellee Department of Children and
Families.

Laura Lawson, Tavares, for Appellee
Guardian Ad Litem Program.


BADALAMENTI, Judge.

In these consolidated appeals, R.W.M., the father, appeals from a final

judgment terminating his parental rights and from an order denying his motion to set

aside the final judgment. The father contends that the trial court erred when it refused

to set aside the final judgment on the ground that his failure to appear at the final hearing was the product of excusable neglect. Accordingly, the father argues, he should not have been deemed to have consented to the termination of his parental rights. Because no clear and convincing evidence demonstrated that the father willfully failed to appear, we reverse the order denying the motion to vacate the final judgment and the final judgment of termination of parental rights. In so doing, we thus remand for a new trial on the petition for termination of parental rights.

After the children, who had been in their mother's custody, were sheltered, the Department of Children and Families filed an expedited petition for termination of parental rights. As to the father, the Department cited abandonment under section 39.806(1)(b), Florida Statutes (2014), specifically alleging that, while being able, he made no significant contribution to the children's care and maintenance, that he had not supported them or contributed to their care, and that the children have failed to maintain any relationship with him. In addition, the Department sought termination on the ground that the father was an incarcerated parent under section 39.806(1)(d)(3) with a lengthy criminal history who had not provided for the children's care, well-being, or physical, mental, or emotional health.

At the advisory hearing, which he attended by telephone from the DeSoto County Jail, the father stated that he had just received the termination papers. He asserted that the mother had disappeared with his children and prevented him from contacting them. The trial judge provisionally appointed an attorney for the father and set a date for the trial. On more than one occasion during the advisory hearing, the judge specifically told the father that if he was still in custody on the date of the adjudicatory hearing, "they'll have you brought over, or make sure you appear by

phone. Either way, however they want to do it." However, the father was adamant that he would attend the hearing because the mother had taken the children and kept him "in the dark" while they were "on the run." The judge's final admonition to the father was that if he were released at the time of the hearing, he must personally appear at the trial or the court would "establish the petition" without him. Based upon this, the father clearly could have left that hearing with the impression that if he were incarcerated at the time of the final hearing, he could appear by telephone.

A new attorney was appointed for the father shortly after this hearing. At the commencement of the trial, the father's attorney informed the court that despite extraordinary efforts to transport the father from the Pinellas County Jail to the Manatee County Jail, the father did not appear in the Manatee County courtroom. The father's attorney explained that he had conferred with his client a few days earlier and had given him three options: (1) sign a surrender, which the father refused to do; (2) go to trial; or (3) "go ahead and just refuse to come over," which would constitute a default or consent by nonappearance. According to the bailiff, the father was at the jail but refused to come over. The father's lawyer stated that he was prepared to go to trial. The trial judge then declared that the father's nonappearance constituted a consent to the termination of parental rights. After a brief trial, the court found that termination of parental rights was in the children's manifest best interests and granted the petition.

After the father filed a pro se notice of appeal, the trial court appointed the father's trial counsel as his appellate counsel. In case number 2D14-5630, counsel filed an initial brief and raised, as the sole issue, that the trial court erred in entering a default judgment based on the father's nonappearance without taking sworn testimony on the reason the father failed to personally appear at the adjudicatory hearing. Counsel

- 3 -

pointed out that the father's pro se notice of appeal indicated that the father felt that he had the option to appear telephonically at the adjudicatory hearing if he were still incarcerated. The father contended in his notice of appeal that he was available before the start of the hearing and waited at the Manatee County Jail for the clerk of court to call him so that he could appear.

Shortly thereafter, the father's counsel filed a motion to relinquish jurisdiction from this court back to the circuit court, which this court granted. After an evidentiary hearing, the trial court denied the motion to vacate the termination of parental rights judgment, and the father appealed that order in case number 2D15-2443. Appellate counsel ultimately moved to withdraw from both appeals pursuant to N.S.H. v. Department of Children & Family Services, 843 So. 2d 898 (Fla. 2003), certifying that he could find no meritorious grounds on which to base an appeal. The father then filed pro se briefs in each case.

At the hearing on relinquishment, the Department called the Manatee County Jail deputy who is in charge of telephonic hearings. The deputy regularly observes five or six hearings a week, and she did not remember the father. She was shown two documents,[1] one of which was a request to have the inmate appear by telephone, but apparently there was a note on that document indicating that if the father were to be transported from Pinellas County, then he should be transported to the hearing rather than appear telephonically. The deputy testified that an inmate "automatically gets transported" in the face of conflicting requests, but she did not say that the father was informed of that protocol. Although the deputy described what she

---

[1]Although these documents were apparently accepted as exhibits at the hearing, they do not appear in our record.

might do in a situation such as this, where the inmate insisted that he appear telephonically, she did not actually recall what she did in this case. When recalled to the stand at the conclusion of the hearing, the deputy testified that there have been situations like the father's in the past, but she simply did not remember whether it happened in his case or not. Thus, the deputy did not provide substantial, competent evidence of what actually occurred on the morning of the father's hearing, and she certainly did not offer testimony that would indicate whether the father refused to appear in person at the hearing without regard to the warning that his rights would be terminated for nonappearance.

In reality, the father offered the only competent evidence of the confusion surrounding his failure to physically appear in court. He testified that he thought appearing telephonically was not really a choice but that it was required, so he was totally surprised when the deputies came to transport him, and he refused because he did not want to miss the hearing. Also, because he was surprised that he was to be transported, he was concerned about his unshaven and unkempt appearance. He was sitting with the deputy waiting for a call at the time the hearing was to start, but no call came. According to the father, the deputy tried to call his attorney's office and emailed the clerk of the court after about ten minutes. Forty minutes later, the deputy received a call informing the deputy and the father that the trial had proceeded without the father.

In response to this testimony, the Department's attorney read into the record the father's counsel's statements at the adjudicatory hearing regarding his client's failure to appear. Although there was some discussion with the judge of having the father's attorney withdraw and become a witness, that option was ultimately not pursued. Notably, the father's counsel did not argue—as he had in the initial brief

originally filed in case number 2D14-5630—that the father could have reasonably assumed from the trial court's advice at the adjudicatory hearing that he had the option to appear by phone.

These facts do not provide competent, substantial evidence that the father's refusal to come to the final hearing was willful rather than the product of excusable neglect. There is record evidence that the judge himself told the father that he could appear telephonically. In fact, the judge repeated an admonition that the father must appear in person if he were released from jail at the time of the hearing; the judge did not explain that the father must appear in person if he were still incarcerated and transported to the Manatee County Jail.

"[T]he Department must prove the allegations supporting the termination of parental rights by clear and convincing evidence . . . ." R.W.W. v. Dep't of Children & Families, 788 So. 2d 1020, 1023 (Fla. 2d DCA 2001). See also § 39.809(1), Fla. Stat. (2014). Furthermore, the trial court's factual findings cannot be sustained unless they are supported by substantial, competent evidence. See M.J.S. v. Dep't of Children & Family Servs., 764 So. 2d 825, 826 (Fla. 2d DCA 2000).

Although section 39.801(3)(d) authorizes constructive or implied consent in termination cases, determining a termination of parental rights by default for failure to appear is disfavored. See B.D. v. Dep't of Children & Families, 46 So. 3d 650, 650 (Fla. 5th DCA 2010). Where the record reflects that the parent was making a reasonable effort to appear at the scheduled hearing, the trial court should either grant a short continuance or permit the parent to appear by telephone. Id. (citing D.M. v. Dep't of Children & Families, 921 So. 2d 737 (Fla. 5th DCA 2006); B.H. v. Dep't of Children & Families, 882 So. 2d 1099, 1100-01 (Fla. 4th DCA 2004)). Moreover, "Florida public

policy favors an adjudication on the merits over the entry of a default, and thus a properly filed motion to vacate a consent by default should be liberally granted." T.L.D. v. Dep't of Children & Family Servs., 883 So. 2d 910, 915 (Fla. 2d DCA 2004) (citing R.H. v. Dep't of Children & Family Servs., 860 So. 2d 986, 988 (Fla. 3d DCA 2003)).

Here, there is no evidence that the father intentionally failed to appear in order to consent to termination of his rights without signing surrenders. In fact, the father has consistently asserted that he did not abandon his children and that the mother kept them away from him so that he could never provide support or forge a meaningful relationship with them despite his incarceration. Although the trial court did not reach the issue, this allegation could conceivably form the basis for a meritorious defense to the petition.

In a termination of parental rights case, where a fundamental right is at stake, a trial court should not find that a parent has consented by virtue of nonappearance unless there is clear and convincing evidence that the failure to appear was willful. In re Adoption of Baby E.A.W., 658 So. 2d 961, 967 (Fla. 1995) ("To terminate a parent's right in a natural child, the evidence must be clear and convincing."); see also Statewide Guardian Ad Litem Program v. A.A., 171 So. 3d 174, 177 (Fla. 5th DCA 2015). Although we recognize the many challenges trial courts face in these expedited cases, a brief continuance of a day or even an hour so that the lawyers and judge could have acquired definitive information about the father's failure to appear would have been a reasonable response to this problem.

Accordingly, we reverse the orders on appeal in these cases and remand for a new trial on the petition for termination of parental rights. On remand, the trial

court shall appoint a different attorney to represent the father in the new trial on the petition for termination of parental rights.

ALTENBERND and LUCAS, JJ., Concur.